FILED

99 MAY 21 PM 2:19

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CLYDE THOMAS CARTER )
)
    Plaintiff, )
)
vs. )   Civil Action No. CV-97-S-3063-NE
)
BOB RODGERS,[1] individually, and )
in his capacity as Trustee in )
the Clyde Thomas Carter )
Bankruptcy; CLEMENTS ANTIQUES )
OF TENNESSEE, INC.; CHARLES W. )
CLEMENTS, SR. and CHARLES W. )
CLEMENTS, JR., )
)
    Defendants. )

ENTERED

MAY 2 1 1999

## MEMORANDUM OPINION

Plaintiff, Clyde Thomas Carter, commenced this action on November 21, 1997. Carter, proceeding *pro se*, alleges jurisdiction exists under 28 U.S.C. § 1332, notwithstanding the fact that the causes of action he alleges arise under only federal law. Carter also alleges jurisdiction is based on 11 U.S.C. §§ 322, 323; 42 U.S.C. § 1983; and the Fifth Amendment to the United States Constitution.[2] In addition, Carter alleges certain

---

[1] In the complaint, plaintiff named "Bob Rogers" as a defendant. Other documents, including the filings by that defendant, indicate such defendant's name is spelled "Rodgers."

[2] Plaintiff alleges a constitutional violation and that jurisdiction may be founded upon 42 U.S.C. § 1983. No "state action" is alleged, however, and this court will construe those bases as a claim alleged under the counterpart to § 1983 for federal government action, the doctrine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 619

defendants' actions violated 18 U.S.C. §§ 152(8), 154. Carter claims that defendants' conduct rendered his estate in bankruptcy less valuable and "because of the large non-dischargeable debt in the estate he has been deprived of the true value of his property." (Complaint, Doc. No. 1, at ¶ 19.) He seeks compensatory and punitive damages in excess of $75,000. Carter filed a motion for partial summary judgment (Doc. No. 19). Defendant Bob Rodgers filed a motion for summary judgment (Doc. No. 24.), and defendants Clements Antiques of Tennessee, Inc. ("CAT"), Charles W. Clements, Sr., and Charles W. Clements, Jr. filed a motion for summary judgment as well (Doc. No. 22.). Those motions presently are before this court.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis added.) The movant bears the initial burden of showing

_____

(1971).

2

the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not

3

prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

4

## II. FACTS

### A. Bankruptcy and Auction

Clyde Thomas Carter filed a petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Northern District of Alabama on March 5, 1991. The case was converted to a case under Chapter 7 of the Bankruptcy Code in July of 1994. Defendant Bob Rodgers was appointed to serve as Trustee of the Chapter 7 bankruptcy estate.

On June 29, 1995, the Bankruptcy Court approved Rodgers' employment of defendant CAT as auctioneer for the sale of personal property. Defendants Charles W. Clements, Sr. and Charles W. Clements, Jr. serve on the three-person Board of Directors at CAT, but neither was employed individually in connection with the auction or the bankruptcy proceedings. The sale at issue was held on August 5, 1995, at CAT's principal place of business located in Chattanooga, Tennessee.

Defendant CAT and two Clements family members purchased property from the bankruptcy estate, including an automobile. Defendant Rodgers and his wife were in attendance, and Mrs. Rodgers successfully bid on an oak dresser at a purchase price of $300.

5

**B.   Proceedings in the Bankruptcy Court**

The Bankruptcy Administrator for the Northern District of Alabama filed a Motion to Remove Trustee from Case and Appoint Successor Trustee on December 5, 1995.   In such motion, the administrator claimed that Mrs. Rodgers' purchase of the dresser constituted an acquisition (albeit indirect) by Trustee Rodgers of an interest adverse to the estate, rendering him "no longer 'disinterested' as is required by 11 U.S.C. § 701(a), and as defined by 11 U.S.C. § 101(14)."   (Plaintiff's memorandum in support of partial summary judgment, exhibit A at p. 2.)   The administrator requested removal of Rodgers as Trustee for the Carter bankruptcy estate.   On December 6, the Bankruptcy Court accepted Rodgers' voluntary resignation as Trustee in the Carter proceedings, and appointed James G. Henderson as Successor Trustee.

On October 22, 1995, CAT filed an application for payment of $4,152.60 in fees.   No objections to the application were filed. After proper notice and a hearing, the Bankruptcy Court awarded CAT the full amount requested, on October 27.

On March 26, 1996, however, the Bankruptcy Administrator filed a Motion to Require Disgorgement of the Auctioneer's Fees.   The administrator alleged that "the purchase of the [estate's] assets and the payment of commission on said purchases constitutes an

6

acquisition by the Auctioneer of an interest adverse to the estate and destroys the requisite 'disinterested' status as defined in 11 U.S.C. § 101(14) and is in violation of 11 U.S.C. § 327." (Clements' memorandum in support, Doc. No. 23, exhibit C at ¶ 10.) The administrator argued the fees were inappropriate and should be disgorged, pursuant to 11 U.S.C. § 328.

The Bankruptcy Administrator, the Successor Trustee (Henderson), and CAT entered into a settlement and compromise agreement and filed a joint motion seeking approval of that agreement in the Bankruptcy Court on June 4, 1996. On July 22, Carter filed a "Motion against Clements Auction and Bob Rogers [sic]," alleging those two defendants "conspired to have [his] estate robbed of proceeds that should have gone to [his] non-dischargeable [sic] debt." (Clements' memorandum in support, exhibit D.) Proceeding pro se, Carter claimed CAT and Rodgers violated 18 U.S.C. §§ 152, 153, 154, and 155. He sought an award of one million dollars in actual damages and five million dollars in punitive damages.

The Bankruptcy Court held a hearing on the joint motion to approve the compromise and settlement on July 30, 1996. The court concisely phrased the terms of the compromise:

7

> Clements has agreed to disgorge all commissions and buyer's premiums it received in connection with the auction, which totaled $8,600. Further, Clements waives its right to file a resulting claim in the case for the monies paid to settle this dispute. Finally, entry of this Order [approving the agreement] shall have the effect of a release between and among Clements, the Bankruptcy Administrator[,] and the Trustee whereby they each release and forever discharge one another from all claims, demands, actions and causes of action of any kind whatsoever relating to this dispute.

(Clements' memorandum in support, exhibit A at pp. 2-3.) Carter attended the hearing and voiced his objections to the settlement, specifically that the amount proposed to be returned to the estate was insufficient and that Clements should not be entitled to retain the automobile purchased at the auction. The court considered Carter's objections, but found that approving the agreement would be "in the best interest of the estate." (*Id.* at p. 3.) The court entered an order approving the compromise and settlement on August 20, 1996.

The court also held a hearing on Carter's Motion to Require Disgorgement of Fees Paid to Former Trustee, on July 30, 1996. The court denied that motion in an order entered on August 2. The court found that Mrs. Rodgers' purchase was improper but voiding the sale, which she offered to do, would not add value to the estate. Other challenged sales already had been approved, or the challenges were otherwise resolved. The court found further that:

8

[I]n applying the equities of the case that despite the
inappropriate purchase of the oak dresser by Mrs.
Rodgers, the fact that Mr. Rodgers has resigned, not only
as a trustee in this case, but also as a panel trustee in
this District, thus being ineligible for fees that would
have been earned on the disposition of assets of the
estate, which fees could have exceeded $50,000, is more
than a proportionate remedy for the purchase of the
dresser. Therefore, further disgorgement of fees by Mr.
Rodgers would not be equitable, particularly considering
Mr. Rodgers' many years of service to the District as a
panel trustee.

(Rodgers' motion, exhibit B at pp. 4-5.)

Carter filed an "order for new trial or notice of appeal" and

participated in a hearing thereon, held on September 17, 1996. The

Bankruptcy Court treated such filing as a motion to reconsider the

order authorizing the above settlement agreement, and denied that

motion on September 25, 1996, citing Carter's failure to present

new evidence, law, or facts. Carter had filed another notice of

appeal, which the court dismissed on September 30 for failure to

complete the record for appeal.

Subsequently, the Bankruptcy Court addressed the

aforementioned motion Carter filed on July 22 against Clements

Auction and Bob Rodgers. After holding a hearing on September 17,

the court denied the motion in an order entered on October 22,

1996. The court found Carter's motion moot because any claims

against CAT or Rodgers belonged to the estate and the Trustee

9

properly settled such claims with court approval. The court also found Carter did not object to the events complained of in a timely fashion, despite the fact he was represented by counsel at the time. The court concluded that Carter therefore had no standing to pursue the relief he sought. Moreover, the court said the motion was procedurally improper and noted the proper course for Carter was to raise his claims in the form of a complaint initiating an adversary proceeding.

Clyde Thomas Carter, through counsel, filed suit in the United States District Court for the Northern District of Alabama, Southern Division on August 5, 1997. Carter raised essentially the same claims in that action as in the case at bar. Through his attorney, Carter voluntarily dismissed that action. Carter then instituted the present action *pro se* on November 21, 1997.

### III. DISCUSSION

Clyde Thomas Carter requests in his motion for partial summary judgment, that this court enter judgment as a matter of law with regard to the liability of all defendants, leaving a damages determination to a jury. Defendants CAT, Charles W. Clements, Sr., and Charles W. Clements, Jr. move for summary judgment on all claims, arguing the following issues: (1) Carter has no standing;

10

(2) Carter's claims are barred by the doctrine of *res judicata*; (3) no private right of action is available to Carter under the statutes he cites; (4) Carter's constitutional claims are barred by the statute of limitations; (5) Carter presents insufficient evidence to create a genuine issue of material fact for his constitutional claims; (6) Carter presents insufficient evidence to create a genuine issue of material fact for a claim under the Racketeer Influenced and Corrupt Organizations Act; and (7) Carter has no claim against the individual defendants Charles W. Clements, Sr. and Charles W. Clements, Jr. In a separate motion, defendant Rodgers essentially relies on the motion of the defendants above, offering only supplemental factual and evidentiary support particular to the claims against him.

**A.    Standing**

A rigid standing requirement applies in bankruptcy proceedings, limiting the parties who can challenge a bankruptcy court order to "persons aggrieved" by such order. *See Matter of Novack*, 639 F.2d 1274, 1277 (5th Cir. 1981)[3]; *see also LaBarge v. Benda*, (*In re Merrifield*) 214 B.R. 362, 365-66 (8th Cir. 1997) ("In

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

11

adopting the 'person aggrieved' standard, courts have substantially followed the limitation on standing established under section 39(c) of the former Bankruptcy Act.") A party is a person aggrieved if an order diminishes his property, increases his burdens, or impairs his rights. *See LaBarge*, 214 B.R. at 366.

Defendants argue that Clyde Thomas Carter is not a person aggrieved because any interest he may claim became part of the bankruptcy estate upon the filing of his petition for bankruptcy. Furthermore, defendants assert that, because such interests belong to the estate, the Trustee of that estate is the only interested party with regard to assets or interests of the estate and is, therefore, the exclusive party who has a right to challenge the bankruptcy court's orders. In essence, defendants rely on the general rule which holds that debtors lack a direct pecuniary interest in the bankruptcy estate.

Defendants concede an exception to that rule exists for debtors who can demonstrate that a reversal of the challenged order would yield a surplus of funds, *i.e.*, assets in excess of liabilities, which would entitle the debtor to a distribution of that surplus. The potential receipt of such distributions creates a direct pecuniary interest in the debtor. Nevertheless,

12

defendants demonstrate, and Carter does not refute, that Carter

falls into the category of debtors courts describe as "hopelessly

insolvent." *E.g.*, *McGuirl v. White*, 86 F.3d 1232, 1233, 1235 (D.C.

Cir. 1996).

Another exception arises, however, where the challenged order

affects the terms of the debtor's discharge in bankruptcy. *See In*

*re Thompson*, 965 F.2d 1136, 1144 n.12 (1st Cir. 1992). This court

finds the following language of the D.C. Circuit persuasive:

> First, unlike typical cases in which debts are
> discharged, when debts are not discharged in bankruptcy,
> creditors can seek to collect from debtors personally
> after termination of bankruptcy proceedings .... Second,
> administrative expenses receive first priority, paid even
> before claims of creditors. ... Accordingly, because the
> [debtors'] debt has not been discharged, any portion of
> the estate not used to pay administrative expenses could
> be used by the [debtors] to pay a creditor who attempts
> to recover from them personally at the close of
> bankruptcy. This means that if the [debtors] are
> successful in their effort to reduce the administrative
> expenses they will have reduced their liability on their
> non-discharged debts.

*McGuirl v. White*, 86 F.3d 1232, 1234-35 (D.C. Cir. 1996).

Carter has maintained that the actions at issue affect the

terms of his <u>non-dischargeable</u> debt. Moreover, the Bankruptcy

Court agreed when it overruled Rodgers' motion to dismiss, in which

Rodgers' argued Carter was not a "party-in-interest" and therefore

lacked standing:

13

> The Court found that because the Debtor is subject to a
> nondischargeable judgment, part of any augmentation of
> the estate property would flow to the Debtor's creditors
> and reduce the Debtor's ultimate liability on the
> judgment.   Therefore, the Debtor has a sufficient
> pecuniary interest in the result of this hearing to
> confer standing.

(Order denying debtor's motion, Rodgers' motion, exhibit B at pp.

1-2.)   Defendant does not challenge this classification.

Therefore, because a reduction of the administrative expenses of

the sale at issue may directly reduce Carter's liability on his

non-discharged debts, this court finds that Carter has a sufficient

interest to warrant standing.  *See id.*, at 1233; *see also Abel v.*

*Campbell*, 334 F.2d 339, 341 (5th Cir. 1964) (holding that a debtor

had standing to challenge the merits of his liability for certain

taxes because he would remain liable for those taxes after the

bankruptcy proceeding).

**B.   Res Judicata**

The legal doctrine commonly referred to as "*res judicata*"

encompasses two different preclusion rules:  claim preclusion and

issue preclusion.  Claim preclusion bars the litigation of matters

that could have been litigated in an earlier suit; whereas, issue

preclusion bars the relitigation of matters that were actually

litigated and decided in a prior suit.  *See Pelletier v. Zweifel*,

14

921 F.2d 1465, 1500 (11th Cir. 1991). Defendants argue that claim preclusion bars Carter's action in this court.

The Eleventh Circuit has listed the factors a party must prove to establish that a prior judgment precludes a court from addressing a claim: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases. See id. at 1500-01. Defendants address each of the factors listed above, arguing essentially that "[a]ll of Plaintiff's current claims were previously litigated in the bankruptcy case when the court held two hearings to determine whether to approve the compromise and settlement between the administrator, the trustee, and Clements Antiques, regarding the auctioneer's fees." (Clements' memorandum in support, at 11.)

The first hill defendants must climb in this campaign, i.e., establishing a final judgment on the merits, proves to be insurmountable. The Bankruptcy Court's order approving the compromise and settlement appears to be the order defendants rely upon. In that order, however, the court properly considered the following criteria:

15

> (A) The probability of success in the litigation; (B) The
> complexity of the litigation involved; (C) The expense,
> inconvenience and delay necessarily attending the
> litigation (including the possibility that denial of the
> settlement will cause the depletion of assets; and (D)
> The paramount interest of the creditors and a proper
> deference to their reasonable views in the premises."

(Clements' memorandum in support, exhibit A, ¶ 9.)    Such
considerations are similar to those courts must entertain before
granting a preliminary injunction.   Neither an order granting a
preliminary injunction, nor a bankruptcy court's order authorizing
a settlement may be given preclusive effect as a prior judgment on
the merits.  *See In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th
Cir. 1990).

Although the concept of finality is applied with greater
flexibility in bankruptcy proceedings, *In re Martin Brothers
Toolmakers, Inc.*, 796 F.2d 1435, 1437 (11th Cir. 1986), no other
order of the Bankruptcy Court in this case can be classified as a
final judgment on the merits. The order entered on September 25,
1996, treated Carter's request for a new trial or appeal as a
motion to reconsider the order discussed above.   The court denied
that request "due to the failure to present new evidence, law, or
facts in support of said motion."    (Clements' memorandum in
support, exhibit E.)    The order entered on October 22 found

16

Carter's motion, which raised the same claims as he raises herein,
moot.  The court did not consider the merits of Carter's claims
because it found that he had no standing, and his claims were
procedurally improper in that they should have been raised in a
complaint initiating an adversary proceeding.

    Accordingly, defendants' contention that Carter's claims must
be dismissed, because orders of the Bankruptcy Court establish *res
judicata*, fails.

## C.    Private Right of Action

    Clyde Thomas Carter asserts in his complaint that "[t]his
action arises as a result of acts of misconduct by the Trustee in
bankruptcy and his agents in regard to their handling of various
assets of a Chapter 7 under Title 11 of the United States Code."
In addition to alleging diversity of citizenship and the requisite
amount in controversy, Carter offers 11 U.S.C. §§ 322, 323 and
"Amendment 5 of the U.S. Constitution" as jurisdictional bases for
his claims.  Furthermore, reading the complaint liberally in favor
of this *pro se* plaintiff, *see generally Estelle v. Gamble*, 429 U.S.
97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), the court
construes Carter's reference to 42 U.S.C. § 1983 as alleging a
claim under the doctrine of *Bivens v. Six Unknown Named Agents of*

17

*Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 619 (1971). In accordance with this liberal construction, the court considers, for jurisdictional purposes, portions of the complaint in which Carter refers to 11 U.S.C. § 327; 18 U.S.C. § 1961; and 18 U.S.C. §§ 152(8),[4] 154.

The first provisions of the Bankruptcy Code which Carter relies upon, 11 U.S.C. §§ 322[5] and 323,[6] delineate the

---

[4] Plaintiff alleges in the complaint that defendant Rodgers violated 18 U.S.C. § 153(8). Given that the only subsections of § 153 are labeled (a) and (b), and that plaintiff alleges violations of 18 U.S.C. § 152(8) elsewhere in the complaint, this court will construe the reference to § 153(8) in ¶ 12 as a reference to § 152(8).

[5] **§ 322. Qualification of trustee**

(a) Except as provided in subsection (b)(1), a person selected under section 701, 702, 703, 1104, 1163, 1202, or 1302 of this title to serve as trustee in a case under this title qualifies if before five days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties.

(b)(1) The United States trustee qualifies wherever such trustee serves as trustee in a case under this title.

(2) The United States trustee shall determine--

(A) the amount of a bond required to be filed under subsection (a) of this section; and

(B) the sufficiency of the surety on such bond.

(c) A trustee is not liable personally or on such trustee's bond in favor of the United States for any penalty or forfeiture incurred by the debtor.

(d) A proceeding on a trustee's bond may not be commenced after two years after the date on which such trustee was discharged.

11 U.S.C. § 322.

[6] **§ 323. Role and capacity of trustee**

(a) The trustee in a case under this title is the representative of the estate.

18

qualifications, bond requirements, and limitations on liability for a trustee and the capacity of a trustee as representative of the estate, respectively. The language of neither provision indicates Congress intended to authorize a private right of action under that provision. Section 327[7] addresses the authority of a trustee to "employ one or more attorneys, accountants, appraisers,

---

(b) The trustee in a case under this title has capacity to sue and be sued.

11 U.S.C. § 323.

[7] **§ 327. Employment of professional persons**

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

11 U.S.C. § 327.

19

auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Again, nothing in that provision creates a private right of action. Rather, Congress specifically provided a remedy for the type of conduct at issue here in 11 U.S.C. § 328,[8] which authorizes the court "to deny allowance of compensation for services and reimbursement of expenses."

This court has found no authority specifically recognizing a private remedy under any of the cited provisions of the Bankruptcy Code. Moreover, no such provision manifests a congressional intent to create a private remedy. *See generally Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). A private remedy for any such provision does not appear consistent with the scheme Congress created in the Bankruptcy Code. *Cf. Holloway v. Household*

---

[8] **§ 328. Limitation on compensation of professional persons**
• • •

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328.

20

*Automotive Fin. Corp.*, 227 B.R. 501, 504 (N.D. Ill. 1998) (no private cause of action under §§ 105, 501 of the Bankruptcy Code); *Cox v. Zale Delaware, Inc.*, 1998 WL 397841 at *2 (N.D. Ill. 1998) (no private cause of action under § 524 of the Bankruptcy Code). *See generally Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

Similarly, those sections of Title 18 which Carter cites establish criminal liability for conduct of trustees in bankruptcy, but they do not establish a private right of action. *See Clayton v. Raleigh Fed. Sav. Bank*, 194 B.R. 793, 796 (M.D.N.C. 1996), *aff'd*, 1997 WL 82624 (4th Cir. 1997); *In re Terio*, 158 B.R. 907, 911-12 (S.D.N.Y. 1993), *aff'd* 23 F.3d 397 (2d Cir. 1994) ("The Bankruptcy Code does not lend itself to ready inference of remedies not already written into its ... statutory scheme[, and] there is no basis for inferring that 18 U.S.C. § 152 authorizes—or the Bankruptcy Code would permit—a debtor to supplement the comprehensive and detailed civil remedies already available through the Code.")

Notwithstanding the apparent absence of statutory authority, trustees may be held personally liable for willful and deliberate breaches of their fiduciary duties and, potentially, for negligence

21

in performance of their duties.[9]  *See Mosser v. Darrow*, 341 U.S.
267, 71 S.Ct. 680, 95 L.Ed. 927 (1951).  *Compare Sherr v. Winkler*,
552 F.2d 1367 (10th Cir. 1977) *with In re Cochise College Park,
Inc.*, 703 F.2d 1339 (9th Cir. 1983).  Nevertheless, in nearly every
case decided after the Bankruptcy Reform Act of 1978, courts
reviewing allegations of such breaches have done so on appeal from
an order of a Bankruptcy Court which addressed those issues.  *See*,
*e.g.*, *In re Hutchinson*, 5 F.3d 750 (4th Cir. 1993); *Ford Motor
Credit Company*, 680 F.2d 451 (6th Cir. 1982).  *But see Connecticut
General Life Insurance Co. v. Universal Insurance Co.*, 838 F.2d 612
(1st Cir. 1988).  Here, however, Carter has no such order to
challenge, apparently because he never properly challenged the
Trustee's—or the court's—actions in an adversary proceeding.

Moreover, given that this action does not directly challenge
an order of the Bankruptcy Court, this court questions whether the
action is barred by the *Barton* doctrine.  That doctrine stems from
a decision the Supreme Court handed down more than a century ago in
*Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881).  The Sixth

---

[9] See the following cases for good discussion:  *In re Carter Paper Company,
Inc.*, 220 B.R. 276 (Bankr. M.D. La. 1998); *In re J.F.D. Enterprises, Inc.*, 223
B.R. 610 (Bankr. D. Mass. 1998); and *In re Hutchinson*, 5 F.3d 750 (4th Cir.
1993).

22

Circuit recently stated the principle which embodies that doctrine in *DeLorean v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993): "It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *See also Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967), *cert. denied*, 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968); *Vass v. Conron Bros. Co.*, 59 F.2d 969 (2d Cir. 1932); *In re Baptist Medical Center*, 80 B.R. 637, 643 (Bankr. E.D.N.Y. 1987); *In re Campbell*, 13 B.R. 974 (Bankr. D. Idaho 1981).

The purpose of this doctrine is to enable the Bankruptcy Court to maintain better control over the administration of the estate. *See DeLorean*, 991 F.2d at 1241. A limited exception to the above rule is found in 28 U.S.C. § 959,[10] which allows suits against the trustee for actions taken while "carrying on business." This

_____

[10] § 959. Trustees and receivers suable; management; State laws

(a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959.

23

exception does not apply, however, to suits against the trustee for actions taken while administering the estate. *See id.* (citing *In re Campbell,* 13 B.R. at 976.) "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." *Id.* (citations omitted).

Accordingly, this court will order Carter to show cause why his claims should not be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. That is to say, Carter must file a brief with this court demonstrating that his claims against each defendant are (1) legally cognizable, and (2) properly before this court, despite the absence of either a final order on the merits from the Bankruptcy Court and a proper appeal therefrom, or an express grant of leave from the Bankruptcy Court to proceed with this action. Defendants are entitled to respond.[11]

---

[11] This court is not certain whether Carter may pursue this action and, if so, the extent of potential liability for defendants. Thus, the court will not now pass on defendants' contention that Carter can state no claim against defendants Charles W. Clements, Sr. and Charles W. Clements, Jr. Defendants may reassert such argument in response to Carter's brief.

24

## D.   Are Carter's Constitutional Claims Time-barred?

Defendants argue that Carter's constitutional claims, *i.e.*, the *Bivens* claims, are barred by Alabama's statute of limitations. This court agrees.

The limitations period provided by Alabama law is applicable to Carter's constitutional claims. *See Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994). That period is defined in Alabama Code § 6-2-38(1): all actions for any injury to the person or rights of another not arising from contract ... must be brought within two years." Ala. Code § 6-2-38(1); *see McIntire v. United States*, 884 F. Supp. 1529, 1531-32 (M.D. Ala. 1995) ("For section 1983 and *Bivens* action purposes ... [i]n Alabama, the applicable statute of limitations is found in Alabama Code (1975), § 6-2-38(1)."); *Hatley v. IRS*, 876 F. Supp. 1262, 1268-69 (S.D. Ala. 1995) ("In *Bivens* suits, [Alabama's] general or residual statute of limitations for bringing torts actions applies[, and] ... provides a limitation on such actions after two years.").

Carter's claims arise from the auction that was conducted on August 5, 1995. Defendant Rodgers submitted his last request for fees during July of 1995, for the period of service from July 1994 to June 30, 1995. Defendant CAT submitted an application for

25

allowance of fees on August 15, 1995 and filed the auctioneer's
report on September 5.  The Bankruptcy Court approved CAT's request
on October 22, 1995.  Carter commenced this action on November 21,
1997, beyond the two-year window for bringing the claims therein,
which expired—at the latest—on October 22, 1997.  Accordingly,
Carter's claims for alleged constitutional violations are due to be
dismissed.

**E.   Claim Under the Racketeer Influenced and Corrupt Organizations
Act**

Carter avers in his complaint, "pursuant to ... 18 U.S.C. §
1961, et seq.," that "the Clements Defendants engaged in a civil
conspiracy with the Defendant, Bob Rodgers, to deprive the
bankruptcy estate of valued property and funds."  (Complaint, ¶
18.)  This court construes Carter's allegations as a claim under 18
U.S.C. § 1964, which specifically provides for civil remedies where
a party is injured by conduct that violates a provision of the
Racketeer Influenced and Corrupt Organizations Act ("RICO"):  "Any
person injured in his business or property by reason of a violation
of section 1962 of this chapter may sue therefor in any appropriate
United States district court and shall recover threefold the
damages he sustains and the cost of the suit, including a

26

reasonable attorney's fee ...." 18 U.S.C. § 1964(c). Section 1962

defines the prohibited activities as follows:

> (a) It shall be unlawful for any person who has
> received any income derived, directly or indirectly, from
> a pattern of racketeering activity or through collection
> of an unlawful debt in which such person has participated
> as a principal within the meaning of section 2, title 18,
> United States Code, to use or invest, directly or
> indirectly, any part of such income, or the proceeds of
> such income, in acquisition of any interest in, or the
> establishment or operation of, any enterprise which is
> engaged in, or the activities of which affect, interstate
> or foreign commerce. ...
> (b) It shall be unlawful for any person through a
> pattern of racketeering activity or through collection of
> an unlawful debt to acquire or maintain, directly or
> indirectly, any interest in or control of any enterprise
> which is engaged in, or the activities of which affect,
> interstate or foreign commerce.
> (c) It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity or collection
> of unlawful debt.
> (d) It shall be unlawful for any person to conspire to
> violate any of the provisions of subsection (a), (b), or
> (c) of this section.

18 U.S.C. § 1962.

The statute above makes it unlawful "to conduct or

participate, directly or indirectly, in the conduct of [an]

enterprise [that affects interstate commerce] through a pattern of

racketeering activity." *Republic of Panama v. BCCI Holdings*

27

*(Luxembourg) S.A.,* 119 F.3d 935, 948 (11th Cir. 1997); *see* 18 U.S.C. § 1962(c). Congress defined "racketeering activity" as the violation of any of the criminal statutes listed in § 1961(1). *See Republic of Panama,* 119 F.3d at 948. Included in that list of predicate offenses is "any offense involving fraud connected with a case under title 11 (except a case under section 157[12] of this title)." 18 U.S.C. § 1961(1)(D).

The "pattern of racketeering activity" element requires that a RICO plaintiff establish "at least two acts of racketeering activity." *Republic of Panama,* 119 F.3d at 948; *see Pelletier v. Zweifel,* 921 F.2d 1465, 1496 (11th Cir. 1991); 18 U.S.C. § 1961(5). Simply establishing two predicate acts, however, is not sufficient. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 236, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989); *U.S. v. Gonzalez,* 921

---

[12] **§ 157. Bankruptcy fraud**

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
>
> (1) files a petition under title 11;
>
> (2) files a document in a proceeding under title 11; or
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 157.

28

F.2d 1530, 1545 (11th Cir. 1991). The plaintiff must establish that a "continuity plus relationship" characterizes the acts. *Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Committee*, 953 F.2d 587, 593 (11th Cir. 1992) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985)). "Continuity is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Aldridge*, 953 F.2d at 593. Thus, a plaintiff should allege facts which suggest "long-term criminal conduct, not short-lived episodes unlikely to be repeated." *Schiffels v. Kemper Fin. Serv., Inc.*, 978 F.2d 344, 353 (7th Cir. 1992) (internal quotation marks omitted). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902. Thus, a RICO plaintiff must "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900.

29

Carter alleges defendants violated two criminal statues:    18

U.S.C. §§ 152(8)[13] and 154.[14]  Even if he states facts sufficient to

establish violations of these sections, Carter simply does not

allege a "pattern of racketeering activity" as that concept has

been defined.[15]    *See id.* at 236, 109 S.Ct. at 2899; *Jones v.*

---

[13] **§ 152. Concealment of assets; false oaths and claims; bribery**

　A person who—
•••
　　(8) after the filing of a case under title 11 or in contemplation
thereof, knowingly and fraudulently conceals, destroys, mutilates,
falsifies, or makes a false entry in any recorded information
(including books, documents, records, and papers) relating to the
property or financial affairs of a debtor; or
•••
shall be fined under this title, imprisoned not more than 5 years,
or both.

18 U.S.C. § 152.

[14] **§ 154. Adverse interest and conduct of officers**

　A person who, being a custodian, trustee, marshal, or other
officer of the court—
　　(1) knowingly purchases, directly or indirectly, any property of
the estate of which the person is such an officer in a case under
title 11;
　　(2) knowingly refuses to permit a reasonable opportunity for the
inspection by parties in interest of the documents and accounts
relating to the affairs of estates in the person's charge by parties
when directed by the court to do so;  or
　　(3) knowingly refuses to permit a reasonable opportunity for the
inspection by the United States Trustee of the documents and
accounts relating to the affairs of an estate in the person's
charge,
shall be fined under this title and shall forfeit the person's
office, which shall thereupon become vacant.

18 U.S.C. § 154.

[15] Even if Carter alleged a pattern of racketeering activity, he may fail
to state a claim because he does not allege the requisite scienter to permit a
finding that the defendants committed the predicate criminal acts.  *See* Sedima,

30

Childers, 18 F.3d 899, 911-12 (11th Cir. 1994). The alleged conduct of defendants neither "amount[s] to" nor "pose[s] a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. Rather, all of the objectionable conduct arose out of the single auction for property of the bankruptcy estate. Furthermore, nothing suggests such conduct will continue in the future. In fact, the factual developments and procedural history of this case establish that such conduct probably cannot occur again, at least not the alleged conspiracy. Defendant Rodgers has retired from the position of panel trustee for the Northern District. Accordingly, summary judgment is appropriate for Carter's claim under 18 U.S.C. § 1964.

### IV. CONCLUSION

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this $\cancel{21st}$ day of May, 1999.

United States District Judge

---

S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 486-88, 105 S.Ct. 3275, 3280, 87 L.Ed.2d 346 (1985); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 949 (11th Cir. 1997); O'Malley v. O'Neill, 887 F.2d 1557, 1560 (11th Cir. 1989)

31